## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STRAGENT, LLC,<br><br>             **Plaintiff,**<br><br>          **v.**<br><br>MERCEDES-BENZ USA, LLC;<br>MERCEDES-BENZ VANS, LLC;<br>DAIMLER TRUCKS NORTH AMERICA<br>LLC; and<br>DAIMLER NORTH AMERICA<br>CORPORATION,<br>             **Defendants.** | Civil Action No. _____<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement in which Plaintiff Stragent, LLC ("Plaintiff" or "Stragent") complains against Defendants, all upon information and belief, as follows:

## THE PARTIES

1.     Plaintiff Stragent is a limited liability company existing under the laws of the State of Texas.

2.     Defendant Mercedes-Benz USA, LLC ("MBUSA") is an entity organized under the laws of Delaware, with its registered office located at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801, and having offices at 303 Perimeter Center North, Atlanta, Georgia.

3.     Mercedes-Benz Vans, LLC ("MBV") is an entity organized under the laws of Delaware, with its registered office located at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801, with offices at 8501 Palmetto Commerce Pkwy, Ladson, South Carolina 29456.

4.      Daimler Trucks North America LLC ("DTNA") is an entity organized under the laws of Delaware, with its registered office located at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.  DTNA has its principal place of business at 4747 North Channel Avenue, Portland, Oregon 97217.  DTNA has one member, Daimler Trucks & Buses US Holding Inc. Daimler Trucks & Buses US Holdings Inc. is wholly owned by Daimler AG.

5.      Daimler North America Corporation ("DNAC") is a corporation organized under the laws of Delaware, with its registered office located at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.  DNAC is the common parent of MBUSA and MBV. DNAC is a wholly owned subsidiary of Daimler AG.

6.      Daimler AG is a German Aktiengesellschaft with its principal place of business in Stuttgart, Germany.  Daimler AG is the parent company of the Daimler Group, which comprises Daimler AG itself and all subsidiaries over which Daimler AG has either direct or indirect control.  The Daimler Group is in the business of designing, developing, manufacturing, and selling automobiles, vans and trucks, and has made, used, offered for sale and sold automobiles, vans and truck in the United States.

7.      Defendants Mercedes-Benz USA, LLC; Mercedes-Benz Vans, LLC, Daimler Trucks North America LLC and Daimler North America Corporation are hereafter referred to collectively as "Daimler-Mercedes."  As provided by Daimler AG, Daimler AG and its direct and indirect subsidiaries shall be referred to as the "Daimler Group."

8.      MBUSA uses, imports, offers for sale, sells and otherwise distributes throughout the United States of America automotive vehicles under one or more Daimler Group tradenames, and additionally provides support for all such automotive vehicles.  According to Daimler AG,

"With 327,000 units sold, the US is the second-largest market for Mercedes-Benz Cars."

9.      MBV produces Sprinter vans for the U.S. and Canadian market under the brands Mercedes-Benz and Freightliner, and re-assembles the midsize Mercedes-Benz Metris vans. According to Daimler AG, "The US is the second-largest market in the world for Sprinter vans."

10.     DTNA manufactures, sells, and services commercial vehicles under the Freightliner, Western Star, Detroit, and Thomas Built Buses nameplates.  According to Daimler AG, "With 161,000 units sold, the US is the largest market in the world for Daimler Trucks."

11.     The automotive vehicles manufactured, imported, used, offered for sale and/or sold by Daimler-Mercedes in this country since July 11, 2017, the date Patent No. 9,705,765 issued, are collectively referred to here as "Accused Instrumentalities."

## JURISDICTION AND VENUE

12.     This is an action for patent infringement arising under the patent laws of the United States of America, 35 U.S.C. § 1, et seq., including 35 U.S.C. § 271.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

13.     This Court has general and specific personal jurisdiction over Defendants because all Defendants reside in the State of Delaware.

14.     Venue is proper in this judicial district as to each Defendant under 28 U.S.C. § 1400(b) because all Defendants reside in this judicial district.

## DEFENDANTS' USE OF AUTOSAR TECHNOLOGY

15.     AUTOSAR (AUTomotive Open System ARchitecture) is an enabling technology, and, particularly, a layered system for sharing information in an automobile vehicle, which has been standardized by a worldwide development partnership of vehicle manufacturers, suppliers and other companies from the electronics, semiconductor and software industry.  AUTOSAR

comprises, among other things, a set of specifications describing software architecture

components and defining their interfaces.  The AUTOSAR standards facilitate the exchange and

update of software and hardware over the service life of a vehicle by providing a common

software infrastructure for automotive systems of all vehicle domains based on standardized

interfaces for the different software layers.

16.     The Daimler Group is a Core Partner in the AUTOSAR consortium.  Autosar has

become the standard in all automotive vehicles manufactured by the Daimler Group, including

the Accused Instrumentalities.

17.      The Accused Instrumentalities include a number of automotive electronic

control units ("ECUs").  At least some, if not substantially all, the ECUs in the Accused

Instrumentalities have incorporated the Autosar technology.  The ECUs comprise Autosar-

related software provided or specified by the Daimler Group.

18.     Daimler has publicized its acceptance of Autosar.  For example, Daimler's

representatives Martin Brückmann and Philipp Schumacher described the process of Autosar's

acceptance at the 9th AUTOSAR Open Conference on September 28, 2016 at Gothenburg,

Germany.

19.     Daimler has represented that its S-Class automobiles are "almost pure Autosar":



20.     Continental AG has reported that it has been supplying since about March 2017 a central powertrain controller for all new Mercedes E-Class automobiles.  The controller is based on Continental's Engine Management System 3 (EMS3) platform:



21.     EMS3 features a powerful multicore processor and an open variable interconnection architecture equipped with up to 5 CAN channels, a FlexRay channel, up to 2 LIN channels, and various digital and analog inputs and outputs.  The controller incorporates Autosar Release 4.x.x.

22.     Although, as noted above, it is apparent that all Accused Instrumentalities

comprise the Autosar systems specified by the Daimler Group, it is impossible to determine the

Autosar detail for any given Daimler-Mercedes vehicle.  The reason is that the Autosar details

are embedded in the firmware of the various ECUs of the vehicle, and at least many of the ECUs

in Accused Instrumentalities are VIN-specific.  That firmware information cannot be extracted

from the ECUs.  Further, the Daimler Group has maintained its implementation of Autosar as a

trade secret, and it is not possible to determine from publicly-available information the actual

implementations of Autosar in Accused Instrumentalities, at least beyond the information that

the Daimler Group has generally implemented the full Autosar Release 4.x.x.

**COUNT I**

**INFRINGEMENT OF U.S. PATENT NO. 10,248,477**

23.     Plaintiff realleges and incorporates by reference the paragraphs 1 through 22 of

this Complaint, as if fully set forth herein.

24.     Plaintiff is the owner by assignment of United States Patent No. 10,248,477

entitled "System, Method and Computer Program Product for Sharing Information in a

Distributed Framework" ("the '477 Patent").  The '477 Patent was duly and legally issued on

April 2, 2019.  A true and correct copy of the '477 Patent is attached as Exhibit A.  Plaintiff

holds the exclusive rights to bring suit with respect to any past, present, and future infringement

of the '477 Patent.

25.     The '477 Patent claims are materially different from the claims that had been

considered in *Inter Partes* Reviews IPR2017-00676, IPR2017-00677, IPR2017-00457, IPR2017-

00458, IPR2017-01503, IPR2017-01502, IPR2017-01504, 2017-01519, IPR2017-01520,

IPR2017-01521; 2017-01522, which collectively involved Patent 8,209,705 claims 1-20, and

Patent 8,566,843 claims 1-59 (collectively "Prior IPRs").  As one simple example, the '477

Patent claim 1 specifies a "layered system for sharing information," wherein the information is stored and, thereafter, the system "share[s] the stored information with at least one of a plurality of heterogeneous processes including at least one process associated with a second physical network selected from the group consisting of FlexRay, Controller Area Network, and Local Interconnect Network, utilizing a network protocol different from a protocol of the first physical network," which limitations were not included in the claims considered in the Prior IPRs.

26.     During the prosecution of the applications leading to the '477 Patent, applicant cited to the Patent Office all the prior art that was raised during the course of the Prior IPRs, and advised the Patent Office of the Prior IPR proceedings, including that "The above cited inter partes reviews have received final written decisions rendering all challenged claims unpatentable."

27.     Defendants have directly infringed at least claim 1 of the '477 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing Accused Instrumentalities, on and after April 2, 2019, without license or authority. Any Accused Instrumentalities containing at least one ECU that operates according to, or in compliance with, Autosar 4.x.x standards inherently and necessarily infringes the claims of the '477 Patent. Infringement is demonstrated by the preliminary claim chart attached as Exhibit E to this Complaint which compares the limitations of exemplary claim 1 of the '477 Patent against the Accused Instrumentalities. Defendants are also believed to infringe claims 2, 4-6, 9-13, 15-17, 20-24, and 26-30 of the '477 Patent, which will be determined once Plaintiff has an opportunity for discovery, including receipt of Defendants' core documents.

28.     Plaintiff and Defendants have previously litigated U.S. Patents 8,209,705 and 8,566,843, which are patents which issued from a common application and are related to the '477

Patent.  In that prior litigation, Defendants never produced any evidence that the Accused

Instrumentalities were not practicing Autosar and/or were not infringing the claims of U.S.

Patents 8,209,705 and 8,566,843.  If such evidence had existed, Defendants would have

disclosed such evidence to Plaintiff, because such proof would have been sufficient to avoid the

cost of the prior or future litigations.  Thus, Defendants' inability to identify any limitation in the

Plaintiff's asserted patents that is not found in Autosar or in Defendants' automotive vehicles is

an eloquent admission by Defendants that the implementation of Autosar infringes the claims of

Plaintiff's asserted patents and that Defendants are knowingly infringing.

29.     Defendants' acts of infringement have caused and continue to cause damage to

Plaintiff.  Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a

result of Defendants' wrongful acts.

## COUNT II

### DIRECT INFRINGEMENT OF U.S. PATENT NO. 10,031,790

30.     Plaintiff realleges and incorporates by reference prior paragraphs 1 through 16 of

this Complaint, as if fully set forth herein.

31.     Plaintiff is the owner by assignment of United States Patent No. 10,031,790 ("the

'790 Patent") entitled "System, Method and Computer Program Product for Sharing Information

in a Distributed Framework."  The '790 Patent was duly and legally issued on July 24, 2018.  A

true and correct copy of the '790 Patent is attached as Exhibit B.  Plaintiff holds the exclusive

rights to bring suit with respect to any past, present, and future infringement of the Patent.

32.     The '790 Patent claims are materially different from the claims that had been

considered in the Prior IPRs.  Further, during the prosecution of the applications leading to the

'790 Patent, applicant cited to the Patent Office all the prior art that  was raised during the course

of the Prior IPRs, and advised the Patent Office of the Prior IPR proceedings, including that "The above cited inter partes reviews have received final written decisions rendering all challenged claims unpatentable."

33.     Defendants have been and now are directly infringing at least claim 15 of the '790 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing Accused Instrumentalities without license or authority. Infringement is demonstrated by the preliminary claim chart attached as Exhibit F to this Complaint which compares the limitations of exemplary claim 15 of the '790 Patent against the Accused Instrumentalities. Further, Defendants' Accused Instrumentalities may also be infringing claims 1, 2, 11, 13 and 26, which will be determined once Plaintiff has an opportunity for discovery, including receipt of Defendants' core documents.

34.     Defendants have been aware of the '790 Patent and its application to Accused Instrumentalities since at least June 22, 2018, when Plaintiff delivered a notice letter to Defendants' counsel, advising Defendants of the about-to-issue application for the '790 Patent, together with a claim chart demonstrating how Accused Instrumentalities fell within the scope of at least the allowed application claim 50, which is now claim 15 of the '790 Patent.

35.     Defendants' response to the above letter of June 22, 2018 never identified any limitation of the '790 Patent that was missing or could not be found in the Accused Instrumentalities. Further, Plaintiff and Defendants have previously litigated U.S. Patents 8,209,705 and 8,566,843, which are patents which issued from a comm on application and are related to the '790 Patent. In that prior litigation, Defendants never produced any evidence that the Accused Instrumentalities were not practicing Autosar and/or were not infringing the claims of U.S. Patents 8,209,705 and 8,566,843. If such evidence had existed, Defendants would have

disclosed such evidence to Plaintiff, because such proof would have been sufficient to avoid the

cost of the prior or future litigations.  Thus, Defendants' inability to identify any limitation in the

Plaintiff's patents that is not found in Autosar or in Defendants' automotive vehicles is an

eloquent admission by Defendants that the implementation of Autosar infringes the claims of

Plaintiff's asserted patents and that Defendants are knowingly infringing.  Defendants' acts of

infringement have been willful.

36.     Defendants' acts of infringement have caused and continue to cause damage to

Plaintiff. Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a

result of Defendants' wrongful acts.

COUNT III

DIRECT INFRINGEMENT OF U.S. PATENT NO. 10,002,036

37.     Plaintiff realleges and incorporates by reference prior paragraphs 1 through 16 of

this Complaint, as if fully set forth herein.

38.     Plaintiff is the owner by assignment of United States Patent No. 10,002,036 ("the

'036 Patent") entitled "System, Method and Computer Program Product for Sharing Information

in a Distributed Framework."  The '036 Patent was duly and legally issued on June 19, 2018.  A

true and correct copy of the '036 Patent is attached as Exhibit C.  Plaintiff holds the exclusive

rights to bring suit with respect to any past, present, and future infringement of the Patent.

39.     The '036 Patent claims are materially different from the claims that had been

considered in the Prior IPRs.  Further, during the prosecution of the applications leading to the

'036 Patent, applicant cited to the Patent Office the Prior IPRs and all the prior art that  was

raised during the course of the Prior IPRs.

40.     Defendants have been and now is directly infringing at least claim 1 of the '036

Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing the Accused Instrumentalities without license or authority.  Any Accused Instrumentalities containing at least one ECU that operates according to, or in compliance with, Autosar 4.x.x standards inherently and necessarily infringes the claims of  the '036 Patent.  Infringement is demonstrated by the preliminary claim chart attached as Exhibit G to this Complaint which compares the limitations of exemplary claim 1 of the '036 Patent against the Accused Instrumentalities.  Further, the Accused Instrumentalities may also be infringing claims 2-127, which will be determined once Plaintiff has an opportunity for discovery, including receipt of Defendants' core documents.

41.     Defendants have been aware of the '036 Patent and its application to the Accused Instrumentalities since at least June 22, 2018, when Plaintiff delivered a notice letter to Defendants' counsel, advising Defendants of the '036 Patent, together with Exhibit G which demonstrated how the Accused Instrumentalities  fell within the scope of claim 1 of the '036 Patent.

42.     Defendants' response to the above letter of June 22, 2018 never identified any limitation of the '036 Patent that was missing or could not be found in the Accused Instrumentalities.  Further, Plaintiff and Defendants have previously litigated U.S. Patents 8,209,705 and  8,566,843, which are patents which issued from a common application and are related to the '036 Patent.  In that prior litigation, Defendants never produced any evidence that the Accused Instrumentalities were not practicing Autosar and/or were not infringing the claims of U.S. Patents 8,209,705 and 8,566,843.  If such evidence had existed, Defendants would have disclosed such evidence to Plaintiff, because such proof would have been sufficient to avoid the cost of the prior or future litigations.  Thus, Defendants' inability to identify any limitation in the

ation header

Plaintiff's asserted patents that is not found in Autosar or in Defendants' automotive vehicles is an eloquent admission by Defendant that the implementation of Autosar infringes the claims of Plaintiff's asserted patents and that Defendant is knowingly infringing.  Defendants' acts of infringement have been willful.

43.     Defendants' acts of infringement have caused and continue to cause damage to Plaintiff.  Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' wrongful acts.

## COUNT IV

### DIRECT INFRINGEMENT OF U.S. PATENT NO. 9,705,765

44.     Plaintiff realleges and incorporates by reference prior paragraphs 1 through 16 of this Complaint, as if fully set forth herein.

45.     Plaintiff is the owner by assignment of United States Patent No. 9,705,765 ("the '765 Patent") entitled "System, Method and Computer Program Product for Sharing Information in a Distributed Framework."  The '765 Patent was duly and legally issued on July 11, 2017.  A true and correct copy of the '765 Patent is attached as Exhibit D.  Plaintiff holds the exclusive rights to bring suit with respect to any past, present, and future infringement of the Patent.

46.     The '765 Patent claims are materially different from the claims that had been considered in the Prior IPRs.  Further, during the prosecution of the applications leading to the '765 Patent, applicant cited to the Patent Office the Prior IPRs and all the prior art that  was raised during the course of the Prior IPRs.

47.      Defendants have been and now is directly infringing at least claim 1 of the '765 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing the Accused Instrumentalities without license or authority.  Any

Accused Instrumentalities containing at least one ECU that operates according to, or in compliance with, Autosar 4.x.x standards inherently and necessarily infringes the claims of this Patent. Infringement is demonstrated by the preliminary claim chart attached as Exhibit H to this Complaint which compares the limitations of exemplary claim 1 of the '765 Patent against the Accused Instrumentalities. Further, the Accused Instrumentalities may also be infringing additional claims, which will be determined once Plaintiff has an opportunity for discovery, including receipt of Defendants' core documents.

48.     Defendants have been aware of the '765 Patent and its application to the Accused Instrumentalities since at least June 22, 2018, when Plaintiff delivered a notice letter to counsel, advising Defendants of the '765 Patent, together with a claim chart demonstrating how the Accused Instrumentalities fell within the scope of claim 1 of the '765 Patent.

49.     Defendants' response to the above letter of June 22, 2018 never identified any limitation of the '765 Patent that was missing or could not be found in the Accused Instrumentalities. Further, Plaintiff and Defendants had previously litigated U.S. Patents 8,209,705 and  8,566,843, which are patents which issued from a common application and are related to the '765  Patent. In that prior litigation, Defendants never produced any evidence that the Accused Instrumentalities were not practicing Autosar and/or were not infringing the claims of U.S. Patents 8,209,705 and 8,566,843. If such evidence had existed, Defendants would have disclosed such evidence to Plaintiff, because such proof would have been sufficient to avoid the cost of the prior or future litigations. Thus, Defendants' inability to identify any limitation in the Plaintiff's  asserted patents that is not found in Autosar or in Defendants' automotive vehicles is an eloquent admission by Defendants that the implementation of Autosar infringes the claims of Plaintiff's asserted patents and that Defendants are  knowingly infringing. Defendant's acts of

infringement have been willful.

50.     Defendants' acts of infringement have caused and continue to cause damage to Plaintiff.  Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' wrongful acts

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Stragent requests that this Court enter:

A.   A judgment in favor of Stragent that Defendants have infringed the '477 Patent, the '790 Patent, the '036 Patent and the '765 Patent;

B.   A judgment and order requiring Defendants to pay Stragent its damages, costs, expenses, prejudgment and post-judgment interest, and post-judgment royalties for Defendants' infringement of the Patents as provided under 35 U.S.C. § 284;

C.   A judgment and order holding that Defendants' infringement was willful, and awarding treble damages and attorney fees and expenses;

D.   Judgment that this is an exceptional case, and, thus, awarding attorney fees and expenses to Plaintiff; and

E.   Any and all other relief to which the Court may deem Stragent entitled.

## DEMAND FOR JURY TRIAL

Plaintiff Stragent, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial

by jury of any issues so triable by right.

Dated: April 15, 2020                               Respectfully submitted,

*Of Counsel*:                                       /s/ *George Pazuniak*
                                                    George Pazuniak (DE Bar 478)
Thomas F. Meagher                                   O'KELLY & ERNST, LLC
Alan Christopher Pattillo                           824 N. Market St.
Meagher Emanuel Laks Goldberg & Liao,               Suite 1001A
LLP                                                 Wilmington, DE 19801
One Palmer Square                                   Tel: 302-478-4230
Suite 325                                           Email: GP@del-iplaw.com
Princeton, New Jersey 08542
(609) 454-3500                                      *Counsel for Plaintiff*
tmeagher@meagheremanuel.com                         *Stragent, LLC.*
cpattillo@meagheremanuel.com